# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### (Martinsburg Division)

TAMMY M. BLAKE, a/k/a "Brooke,"
and TARA N. FELLERS, a/k/a "Alize,"
 on behalf of herself and all others
similarly situated,

                   Plaintiff,                         Civil Action No. 3:12-cv-2

v.

TABOO GENTLEMEN'S CLUB, LLC,
and CASEY McGEE,

                   Defendants.
_____/

| | |
|---|---|
| Garry G. Geffert | THE ZIPIN LAW FIRM, LLC |
| Co-Counsel for Plaintiff | Gregg C. Greenberg |
| P.O. Box 2281 | Co-Counsel for Plaintiff |
| Martinsburg, WV 25402 | 8403 Colesville Road, #610 |
| (304) 262-4436 | Silver Spring, MD 20910 |
| Fax: (304) 596-2474 | (304) 587-9373 |
| geffert@wvdsl.net | (304) 587-9397 |
| | ggreenberg@zipinlaw.com |
| | |
| Bradley J. Shafer (MI Bar No. P36604)* | David A. Camilletti, Esquire |
| Matthew J. Hoffer (MI Bar No. P70495)* | WV State Bar Id No. 599 |
| SHAFER & ASSOCIATES, P.C. | Co-Counsel for Defendants |
| Co-Counsel for Defendants | 103 W. Liberty Street |
| 3800 Capital City Blvd., Suite 2 | Charles Town, West Virginia 25414 |
| Lansing, Michigan 48906 | (304) 725-0937 telephone |
| (517) 886-6560 | (304) 725-1039 facsimile |
| brad@bradshaferlaw.com | dcamilletti@frontier.com |
| matt@bradshaferlaw.com | |
| *Pending Admission Pro Hac Vice* | |

## ANSWER TO AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

## ANSWER TO AMENDED COMPLAINT

NOW COME Taboo Gentlemen's Club, LLC, and Casey McGee, by and through counsel, and in answer to the First Amended Complaint (Dkt. 10) filed by Tammy M. Blake and Tara N. Fellers, hereby state the following:

1.      In response to Paragraph 1, Taboo Gentlemen's Club, LLC, ("Taboo") and Casey McGee ("McGee") (or collectively referred to as "Defendants") admit that Plaintiffs have filed a complaint seeking recovery under the Fair Labor Standards Act (the "FLSA"), being 42 U.S.C. § 201, et. seq.; and under the West Virginia Wage Payment and Collection Act ("WPCA"), being W.VA. Code § 21-5-1, et seq. (the FLSA and WCPA collectively being the "Acts"); but deny as untrue that Plaintiffs or others similarly situated have stated any valid claim or are entitled to any recovery against Defendants under the Acts.

## JURISDICTION

2.      In response to Paragraph 2 of Plaintiffs' Complaint, Defendants admit in part that, pursuant to 28 § U.S.C. § 1331, this Court has jurisdiction to hear Plaintiffs' claims alleged under 29 U.S.C. § 216(b), but deny that the Court has jurisdiction as to Plaintiffs or any person they purport to represent, who have entered into an arbitration agreement with Defendant Taboo.

3.      In response to Paragraph 3 of Plaintiffs Complaint, Defendant deny as untrue that the Court has or should exercise supplemental or pendant jurisdiction over Plaintiffs' state law claims; and deny as untrue that Plaintiffs' state law claims are so related to Plaintiffs' federal law claims that they form part of the same case or controversy.

4.      In response to Paragraph 4 of Plaintiffs' Complaint, without admitting whether jurisdiction is proper in relation to Plaintiffs' state law claims, Defendants admit in part that

venue is proper in this Court but deny that venue is proper as to Plaintiffs or any person they purport to represent, who have entered into an arbitration agreement with Defendant Taboo.

## PARTIES

5.      In response to Paragraph 5 of Plaintiffs' Complaint, Defendants lack sufficient information to form a belief as to the truth of the matter asserted and neither admit nor deny the allegation, but leaves Plaintiffs to their proofs.

6.      In response to Paragraph 6 of Plaintiffs' Complaint, Defendants lack sufficient information to form a belief as to the truth of the matter asserted and neither admit nor deny the allegation, but leaves Plaintiffs to their proofs.

7.      Defendants admit the allegations contained in Paragraph 7 of Plaintiffs' Complaint.

8.      Defendant Taboo admits the allegations contained in Paragraph 8 of Plaintiffs' Complaint.

9.      Defendant McGee admits the allegations contained in Paragraph 9 of Plaintiffs' Complaint.

10.      As pled, Defendants deny as untrue allegations contained in Paragraph 10 of Plaintiffs' Complaint.

11.      In response to Paragraph 11 of Plaintiffs' Complaint, Defendants state that the allegation improperly asserts a legal conclusion and deny the allegation as untrue.

12.      In response to Paragraph 12 of Plaintiffs' Complaint, Defendants state that the allegation improperly asserts a legal conclusion and deny the allegation as untrue.

13.      In response to Paragraph 13 of Plaintiffs' Complaint, Defendants state that the allegation improperly asserts a legal conclusion and deny the allegation as untrue.

14.     In response to Paragraph 14 of Plaintiffs' Complaint, Defendants state that the allegation improperly asserts a legal conclusion and deny the allegation as untrue.

15.     In response to Paragraph 15 of Plaintiffs' Complaint, Defendants state that the allegations assert an improper legal conclusion and deny the allegation as untrue.

## FACTS

16.     Defendants deny the allegations in Paragraph 16 of Plaintiffs' Complaint as untrue.

17.     Defendants deny the allegations in Paragraph 17 of Plaintiffs' Complaint as untrue.

18.     Defendants deny the allegations in Paragraph 18 of Plaintiffs' Complaint as untrue.

19.     In response to Paragraph 19 of Plaintiffs' Complaint, Defendants deny as untrue that Plaintiffs had any employment related job duties, for the purposes of the Acts, at any relevant time.

20.     In response to Paragraph 20 of Plaintiffs' Complaint, Defendants admit that Blake performed under the stage name "Brooke" but deny that she worked within the meaning of the FLSA or WCPA.

21.     In response to Paragraph 21 of Plaintiffs' Complaint, Defendants admit that Fellers performed under the stage name "Alize" (or similar).  But deny that she "worked" within the meaning of the FLSA or WCPA.

22.     In response to Paragraph 22 of Plaintiffs' Complaint, Defendants deny as untrue that Plaintiffs had any employment related job duties, for the purposes of the Acts, at any relevant time.

23.     In response to Paragraph 23 of Plaintiffs' Complaint, Defendants deny as untrue that Plaintiffs had any "term of employment," and presently lack sufficient information as to the truth of the matter asserted regarding the number of days per week Plaintiffs allege to have performed, and neither admit nor deny the allegation, but leave Plaintiffs to their proofs.

24.     Defendants deny as untrue the allegations in Paragraph 24 of Plaintiffs' Complaint.

25.     Defendants deny as untrue the allegations in Paragraph 25 of Plaintiffs' Complaint.

26.     Defendants deny as untrue the allegations in paragraph 26 of Plaintiffs' Complaint.

27.     In response to Paragraph 27 of Plaintiffs' Complaint, Defendants deny that Plaintiffs were employed by Defendant Taboo within the meaning of the Acts at any relevant time.  Defendants admit that Taboo did not directly pay Plaintiffs any wages or other monies for them to perform their independent business activities upon the premises.  However, should Plaintiffs be determined to be employees of Taboo, the service charges they retained discharge any wage obligation of Taboo.

28.     In response to Paragraph 28 of Plaintiffs' Complaint, Defendants admit that Taboo did not directly pay any wages or other monies to other exotic dancers performing their independent business activities upon its premises. However, should the exotic dancers be determined to be employees of Taboo, the service charges they retained discharge any wage obligation of Taboo.

29.     Defendants deny as untrue the allegations in Paragraph 29 of Plaintiffs' Complaint.

30.     Defendants deny as untrue the allegations in Paragraph 30 of Plaintiffs' Complaint.

31.     Defendants deny as untrue the allegations in Paragraph 31 of Plaintiffs' Complaint.

32.     Defendants deny as untrue the allegations in Paragraph 32 of Plaintiffs' Complaint.

33.     Defendants deny as untrue the allegations in Paragraph 33 of Plaintiffs' Complaint.

34.     Defendants deny as untrue the allegations in Paragraph 34 of Plaintiffs' Complaint.

35.     Defendants deny as untrue the allegations in Paragraph 35 of Plaintiffs' Complaint.

36.     Defendants deny as untrue the allegations in Paragraph 36 of Plaintiffs' Complaint.

37.     Defendants deny as untrue the allegations in Paragraph 37 of Plaintiffs' Complaint.

38.     Defendants deny as untrue the allegations in Paragraph 38 of Plaintiffs' Complaint.

39.     Defendants deny as untrue the allegations in Paragraph 39 of Plaintiffs' Complaint.

40.     In response to Paragraph 40 of Plaintiffs' Complaint, Defendants deny as untrue that Taboo was required to pay or failed to pay Plaintiffs any wages or other monies pursuant to the FLSA.

41.     Defendants deny as untrue the allegations in Paragraph 41 of Plaintiffs' Complaint.

42.     Defendants deny as untrue the allegations in Paragraph 42 of Plaintiffs' Complaint.

43.     Defendants deny as untrue the allegations in Paragraph 43 of Plaintiffs' Complaint.

44.     Defendants deny as untrue the allegations in Paragraph 44 of Plaintiffs' Complaint.

45.     As pled, Defendants presently lack sufficient information to form a belief as to the truth of the matters asserted in Paragraph 45 of Plaintiffs' Complaint and neither admit nor deny the allegations, but leaves Plaintiffs to their proofs.

46.     Defendants deny as untrue the allegations in Paragraph 46 of Plaintiffs' Complaint.

## **COUNT I**

47.     In response to Paragraph 47 of Plaintiffs' Complaint, Defendants deny as untrue that Plaintiffs have stated a valid claim under the FLSA.

48.     In response to Paragraph 48 of Plaintiffs' Complaint, Defendants restate their answers to Paragraphs 1 through 46 of Plaintiffs' Complaint.

49.     In response to Paragraph 49 of Plaintiffs' Complaint, Defendants deny as untrue that Plaintiffs are similarly situated, within the meaning of 29 U.S.C. § 216(b with the other entertainers who perform on the premises of Taboo.

50.     Defendants deny as untrue, the allegations set forth in Paragraph 50 of Plaintiffs' Complaint.

51.     In response to Paragraph 51 of Plaintiffs' Complaint, Defendants state that the allegation improperly asserts a legal conclusion and deny the allegation as untrue.

52.     In response to Paragraph 52 of Plaintiffs' Complaint, Defendants state that the allegation improperly asserts a legal conclusion and deny the allegation as untrue.

53.     In response to Paragraph 53 of Plaintiffs' Complaint, Defendants state that the allegation improperly asserts a legal conclusion and deny the allegation as untrue.

54.     In response to Paragraph 54 of Plaintiffs' Complaint, Defendants state that the allegation improperly asserts a legal conclusion and deny the allegation as untrue.

55.     Defendants deny as untrue the allegations set forth in Paragraph 55 of Plaintiffs' Complaint.

## COUNT II

56.     In response to Paragraph 56 of Plaintiffs' Complaint, Defendants deny as untrue that Plaintiffs have stated a valid claim under the WPCA.

57.     In response to Paragraph 57 of Plaintiffs' Complaint, Defendants restate their answers to Paragraphs 1 through 55 of Plaintiffs' Complaint.

58.     Defendants deny as untrue the allegations set forth in Paragraph 58 of Plaintiffs' Complaint.

59.     In response to Paragraph 59 of Plaintiffs' Complaint, Defendants state that the allegations improperly assert a legal conclusion and deny the allegations as untrue.

60.     Defendants deny as untrue the allegations set forth in Paragraph 60 of Plaintiffs' Complaint.

61.     In response to Paragraph 61 of Plaintiffs' Complaint, Defendants state that the allegation improperly asserts a legal conclusion and deny the allegation as untrue.

62.     In response to Paragraph 62 of Plaintiffs' Complaint, Defendants state that the allegation improperly asserts a legal conclusion and deny the allegation as untrue.

63.     In response to Paragraph 63 of Plaintiffs' Complaint, Defendants deny as untrue that they have caused Plaintiffs, or the persons they allege to be similarly situated, to suffer injury.

## WPCA CLASS ACTION ALLEGATIONS

64.     In response to Paragraph 64 of Plaintiffs' Complaint, Defendants admit that Plaintiffs bring their claims for the reasons stated, but deny as untrue that Plaintiffs have stated any valid claim against them, deny as untrue that Plaintiffs have stated a sufficient basis for certification of a Fed. R. Civ. P. Rule 23 class action, and deny that Plaintiffs' claims can be properly subjected to class treatment.

65.     In response to Paragraph 65 of Plaintiffs' Complaint, Defendants presently lack sufficient information as to the truth of the matter asserted, and neither admit nor deny the allegation, but leave Plaintiffs to their proofs.

66.     Defendants deny as untrue the allegations set forth in Paragraph 66 of Plaintiffs' Complaint.

67.     Defendants deny as untrue the allegations set forth in Paragraph 67 of Plaintiffs' Complaint.

68.     Defendants deny as untrue the allegations set forth in Paragraph 68 of Plaintiffs' Complaint.

69.     Defendants deny as untrue the allegations set forth in Paragraph 69 of Plaintiffs' Complaint.

70.     Defendants deny as untrue the allegations set forth in Paragraph 70 of Plaintiffs' Complaint.

71.     Defendants deny as untrue the allegations set forth in Paragraph 71 of Plaintiffs' Complaint.

72.     Defendants deny as untrue the allegations set forth in Paragraph 72 of Plaintiffs' Complaint.

## PRAYER FOR RELIEF

WHEREFORE, for the forgoing reasons, Defendants respectfully request this Honorable Court enter an order:

A.     Dismissing, with prejudice, each and every count and request for relief set forth in Plaintiffs' Complaint;

B.     Awarding Defendants their attorneys' fees and costs for defending this frivolous suit; and;

C.     Awarding Defendants such further and additional relief that the Court deems just and proper.

Respectfully submitted,

Dated this 2nd Day of April, 2012        *s/ David A. Camilletti*
                                         David A. Camilletti, Esquire
                                         WV State Bar Id No. 599
                                         Co-Counsel for Defendants
                                         103 W. Liberty Street
                                         Charles Town, West Virginia  25414
                                         (304) 725-0937 telephone
                                         (304) 725-1039 facsimile
                                         dcamilletti@frontier.com

                                         Bradley J. Shafer (P36604)*
                                         Matthew J. Hoffer (MI Bar No. P70495)*
                                         **SHAFER & ASSOCIATES, P.C.**
                                         Co-Counsel for Defendants

3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906
Telephone: (517) 886-6560
***Admitted Pro Hac Vice***

## AFFIRMATIVE DEFENSES

1.      Plaintiffs' Complaint fails, and each and every purported cause of action set forth therein fail, to state claims against the Defendants upon which relief can be granted.

2.      Plaintiffs' Complaint, and each and every cause of action set forth therein, is barred because the Plaintiffs' performances at the Defendants' establishment do not fall within the protections of the Fair Labor Standards Act (the "FLSA"), being 42 U.S.C. § 201, *et. seq*.

3.      Plaintiffs' Complaint, and each and every cause of action set forth therein, is barred because the Plaintiffs' performances at the Defendants' establishment do not fall within the protections of the West Virginia Wage Payment and Collection Act ("WPCA"), being W.VA. Code § 21-5-1, *et seq*. (the FLSA and WCPA collectively being the "Acts").

4.      Plaintiffs are exempt from the protections of the FLSA for numerous and various reasons, including but not limited to the fact that they are exempt professional entertainers.

5.      Plaintiffs' Complaint, and each and every purported cause of action set forth therein, is barred because the Plaintiffs never performed, during any applicable statute of limitations period, as employees of the Defendants but, rather, performed as independent contractor professional exotic dance entertainers at Defendants' establishment and entered into agreements with the Defendants which established that the business relationship between the Plaintiffs and the Defendants were to be other than that of employer-employee.

6.      Plaintiffs are not statutory employees pursuant to the FLSA, and each and every one of their causes of action is therefore barred.

7.      Plaintiffs are not statutory employees pursuant to the WPCA, and each and every one of their causes of action is therefore barred.

8.      Defendants are not statutory employers pursuant to the FLSA, and each and every one of the Plaintiffs' causes of action is therefore barred.

9.      Defendants are not statutory employers pursuant to the WPCA, and each and every one of the Plaintiffs' causes of action is therefore barred.

10.     Plaintiffs' claims are barred as a result of their failure to comply with the legal requirements, duties and obligations of being employees.

11.     Plaintiffs' claims are barred because of their failure to comply with the reporting requirements of employees under the Internal Revenue Code ("IRC"), and in particular their failure to report their tip income to the Defendants as would have been their obligation under the IRC had they performed at the Defendants' establishment as their employees.

12.     Plaintiffs' claims are barred because their actions in regard to the tax compliance requirements concerning the income that they earned while performing at Defendants' establishment are inconsistent with having been employees of the Defendants.

13.     Plaintiffs' claims are barred because the withholdings that would be due in regard to the tip income earned by the Plaintiffs, as required by the IRC in the event that the Plaintiffs were employees of the Defendants, would more than completely offset any net wages that Plaintiffs may be found to have been entitled in the event that they are determined to have been employees of the Defendants during the applicable statute of limitations period, and, therefore, Plaintiffs lack standing to bring forth their claims.

14.     As Plaintiffs' Complaint is pled, some or all of their claims are barred by the applicable statute of limitations.

15.     In the circumstances at bar, the actions and conduct of the Defendants do not constitute "willful" violations of the Fair Labor Standards Act ("FLSA"), and as a consequence thereof the applicable statute of limitations in this action is only two years, and not the three years as alleged in Plaintiffs' Complaint.

16.     Plaintiffs' claims are barred by the doctrine of laches as a result of Plaintiffs having failed to timely assert the claims contained in their Complaint; thereby permitting Defendants to act to their detriment.

17.     Plaintiffs' claims are barred by the doctrine of payment, as a result of the mandatory charges for entertainment services paid by customers/patrons and which the Plaintiffs retained and did not remit to Defendants.

18.     The mandatory fees for entertainment services that Plaintiffs charged to customers/patrons are neither "tips" nor "gratuities" but are service charges as the cost to customers/patrons for obtaining personal entertainment services, and therefore under the Fair Labor Standards Act can be used to offset any minimum wage/overtime obligations found to be owing in this action.  Because Plaintiffs were paid, and retained, such mandatory fees for entertainment services, and because the amount of such fees that the Plaintiffs earned are far in excess of any minimum wages/overtime pay to which they may be found to have been due if they are determined to have been employees, Plaintiffs' claims are barred as there have been no violations of the Fair Labor Standards Act even if they are ultimately found to have been employees of the Defendants during the applicable statute of limitations period (which Defendants specifically deny).

19.     Plaintiffs' claim for liquidated damages under the Fair Labor Standards Act is barred, or should be reduced, for the reason that the actions of the Defendants were taken in

good faith, and because the Defendants had reasonable grounds for believing that their actions were not in violation of the provisions of those statutes.

20.     Plaintiffs' claims are barred for the reason that they have failed to make restitution to the Defendants prior to initiating this litigation.

21.     Plaintiffs' claims are barred because they have failed to return to the Defendants the charges that they received from customers/patrons as payment for providing personal entertainment services to them, which by law and in equity would be the property of the Defendants if the Plaintiffs were, in fact, their employees.

22.     Plaintiffs' claims are barred by the doctrine of accord and satisfaction.

23.     Plaintiffs' claims are barred by the doctrines of fraud, fraud in the inducement, unjust enrichment, and equitable estoppel in that Plaintiffs agreed to perform as independent contractor professional dance entertainers, all times conformed their actions accordingly, at all times retained the financial and other benefits of that business relationship, and at no time prior to initiating their instant suit objected to that business structure.

24.     Plaintiffs are barred from obtaining relief due to the detrimental reliance of the Defendants upon the representations, agreements, actions, and material omissions of the Plaintiffs regarding the nature of their business relationship with the Defendants.

25.     Plaintiffs' claims are barred due to their unclean hands, their failure to do equity, and their violations of the implied covenants of good faith and fair dealing.

26.     Plaintiffs' claims are barred by the doctrine of *in pari delicto*.

27.     Plaintiffs' claims are barred to the extent that they consented to be treated as non-employees and accepted all of the benefits of that business arrangement and structure without complaint or objection during the times that she performed at Defendants' establishment.

28.     Plaintiffs' claims are barred by application of the antecedent question of employment.

29.     Plaintiffs' claims are barred due to their failure to mitigate damages or to use reasonable care to prevent any damages from being incurred.

30.     Plaintiffs' claims are barred by Plaintiffs having waived the right to any recovery.

31.     Plaintiffs' claims are barred due to release.

32.     Plaintiffs' claims are barred because any damages are *de mimimus* and/or nominal.

33.     Plaintiffs' claims are barred as the Defendants acted reasonably and in good faith at all times referenced in the Complaint.

34.     Plaintiffs' claims are barred due to abandonment.

35.     Plaintiffs' claims are barred due to the intentional misconduct of the Plaintiffs.

36.     If Plaintiffs are found to be employees of Defendants, Defendants are entitled to the reduced minimum wage requirements as set forth in Section § 203(m) of the Fair Labor Standards Act as the Plaintiffs would, by their own admissions, fall within the definition of being "tipped employees" within the meaning of § 203(t) of that Act.

37.     Mandatory tip pooling is lawful under the Fair Labor Standards Act, and any claim of the Plaintiffs predicated upon the opposite is therefore barred.

38.     Plaintiffs' claims are barred for the failure of consideration in that during their various performances they obtained and retained mandatory charges paid by customers/patrons for receiving personalized entertainment services; such monies of which would have otherwise been tendered to, and retained by, the applicable Defendants in the circumstances of an employer/employee relationship between the Plaintiffs and the Defendants.

39.     Plaintiffs' claims are barred because the present test under the Fair Labor Standards Act to determine employee and employer status violates the First Amendment and due process clause of the Fifth Amendment to the Constitution.

40.     Plaintiffs' claims are barred because the regulations promulgated by the United States Department of Labor under the Fair Labor Standards Act are invalid.

41.     Plaintiffs' claims are barred to the extent Plaintiffs agreed to resolve their claims by binding arbitration.

42.     To the extent that Plaintiffs agreed to arbitrate claims against Defendants, the Court lacks jurisdiction over any and all of their claims.

43.     The class action allegations of Plaintiffs' Complaint are barred because the question of whether an employer/employee relationship exists must be made on an individualized case-by-case basis, and for that reason no other individuals can be deemed to be "similarly situated" to the named Plaintiffs.

44.     Plaintiffs' claims are barred in whole or in part because FLSA claims cannot be part of a Fed. R. Civ. P. Rule 23 class certification.

45.     Plaintiffs' claims are barred in whole or in part because the Court lacks proper jurisdiction over any individual who has not filed with the court their written consent to join in Plaintiffs' FLSA claim(s).

46.     Plaintiffs' class action claims are barred due to the potential for resulting confusion, irreconcilable conflict, lack of manageability, and prejudice to the putative collective members and to the Defendants.

47.     Plaintiffs are barred from proceeding as a class action under their Complaint due to the lack of an ascertainable or identifiable collective and/or class.

48.     Plaintiffs are barred from obtaining certification of a class action under their Complaint because the members of any potential collective/class are not sufficiently numerous in order to justify this matter proceeding on a collective/class action basis.

49.     Plaintiffs are barred from obtaining certification of a collective/class action under their Complaint due to the absence of a commonality of interests.

50.     Plaintiffs are barred from obtaining certification of a collective/class action under their Complaint because a collective/class action is not the superior method of adjudicating these disputes.

51.     Plaintiffs are barred from obtaining certification of a collective/class action under their Complaint because of the inadequacy of Plaintiffs as representatives of the putative collective/class.

52.     Plaintiffs are barred from obtaining certification of a collective/class action under their Complaint because the circumstances of Plaintiffs are not typical of the putative class.

53.     Plaintiffs are barred from obtaining certification of a collective/class action under their Complaint because of the absence of common questions of fact, and/or because of the absence of similarity concerning the circumstances of Plaintiffs and of the putative class members.

54.     Plaintiffs are barred from obtaining certification of a collective/class action under their complaint because class treatment does not benefit the Court or the parties.

55.     Plaintiffs are barred from obtaining certification of a collective/class action under their Complaint because common questions of law or fact do not predominate.

56.     Plaintiffs are barred from obtaining certification of a class action under their complaint because any damages are unique, individualized, and nominal.

57.     Plaintiffs are barred from obtaining collective/class certification because the class members are subject to unique defenses.

58.     Plaintiffs are barred from obtaining collective/class certification because the class members are subject to unique counterclaims.

59.     Plaintiffs are barred from obtaining collective/class certification because the putative members of the collective/class have entered into arbitration agreements which do not authorize class arbitration or class treatment.

60.     Plaintiffs are barred from obtaining collective/class certification because the putative members of the collective/class have waived their ability to assert their claims on a collective/class basis.

61.     Plaintiffs are barred from obtaining collective/class certification because the putative members of the collective/class have agreed to litigate any and all claims on an individual basis.

62.     Plaintiffs are barred from obtaining collective/class certification because the putative members of the class have agreed, in writing, that should the amounts the Plaintiffs allege to be improper deductions under the WPCA be construed to be deductions, those deductions are authorized.

63.     To the extent any other individuals join this action each and every one of the affirmative defenses set forth above are pled as being applicable to such individual, or individuals, as well.

Defendants reserve the right to supplement these affirmative defenses as they become known during the course of discovery, and in the event that other individuals may consent to join

this action thereby raising additional affirmative defenses particularly relevant to such individual or individuals.

Respectfully submitted,

Dated this 2nd Day of April, 2012      *s/ David A. Camilletti*
David A. Camilletti, Esquire
WV State Bar Id No. 599
Co-Counsel for Defendants
103 W. Liberty Street
Charles Town, West Virginia  25414
(304) 725-0937 telephone
(304) 725-1039 facsimile
dcamilletti@frontier.com

Bradley J. Shafer (P36604)*
Matthew J. Hoffer (MI Bar No. P70495)*
**SHAFER & ASSOCIATES, P.C.**
Co-Counsel for Defendants
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906
Telephone: (517) 886-6560
***Pending Admission Pro Hac Vice***

## JURY DEMAND

Defendants hereby demand a trial by jury.

Respectfully submitted,

Dated this 2nd Day of April, 2012      *s/ David A. Camilletti*
David A. Camilletti, Esquire
WV State Bar Id No. 599
Co-Counsel for Defendants
103 W. Liberty Street
Charles Town, West Virginia  25414
(304) 725-0937 telephone
(304) 725-1039 facsimile
dcamilletti@frontier.com

Bradley J. Shafer (P36604)*
Matthew J. Hoffer (MI Bar No. P70495)*
**SHAFER & ASSOCIATES, P.C.**
Co-Counsel for Defendants
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906
Telephone: (517) 886-6560
***Pending Admission Pro Hac Vice***

## DEFENDANT'S MANDATORY COUNTERCLAIMS[1]

Counterclaimant Taboo Gentlemen's Club, LLC ("Taboo" or "Counter-Plaintiff"), hereby counterclaim and allege against Plaintiffs/Counter-Defendants Tammy M. Blake and Tara N. Fellers ("Blake" and "Fellers") and the purported class of similarly situated individuals (collectively the "Counter-Defendants"), as follows:

### PARTIES

1.      Taboo is a West Virginia limited liability company, duly organized under the laws of West Virginia, authorized to do business in the West Virginia, and operates a bar/nightclub located at 18 Royal Crest Drive, Martinsburg, West Virginia.

2.      Counter-Defendants are professional entertainers who performed as exotic dancers upon the premises of Taboo on various occasions during the period as alleged in Blake and Feller's Complaint ("Complaint") with whom Blake and Fellers claim to be similarly situated and who join or are joined in this suit in any fashion.

---

[1]   By asserting these mandatory counterclaims Defendant(s) does not waive, but expressly reserves the right to demand and move the matter resolved by individual arbitration (*see* Affirmative Defenses 41-42).  Rather, such mandatory counterclaims are asserted to ensure they are not waived and to ensure all claims are referred to arbitration.

3.     Upon information and belief, Blake is an adult female who resides in the State of West Virginia.

4.     Upon information and belief, Fellers is an adult female who resides in the State of West Virginia.

## GENERAL ALLEGATIONS

5.     Prior to performing on the business premises of Taboo, Counter-Defendants entered into oral agreements with Taboo, establishing the business relationship between the Counter-Defendants and Taboo as an independent contractor arrangement (hereinafter, the "Agreements") and not an employment relationship.

6.     In the Alternative, those entertainers performing upon the Defendant's Premises since approximately June, 2011, performed on the premises according to the terms of an Entertainment Licensing Agreement (hereinafter, the "Licensing Agreement(s)").

7.     To the extent any counterclaims are asserted against Counter-Defendants who have entered into a Entertainment Licensing Agreement with Taboo, Taboo asserts that all claims amongst Taboo and entertainers who have entered into a Licensing Agreement with it, including those arising out of occurrences prior to the date of the applicable Licensing Agreement, must be resolved by individual binding arbitration and that no Counter-Defendant with a Licensing Agreement with Taboo is a proper party to or may in any way join or be joined in this lawsuit.   Counterclaims against Counter-Defendants are only included herein, in an abundance of caution, to be sure the counterclaims against the Counter-Defendants with Licensing Agreements are not waived.   Taboo expressly reserves and does not waive the right to demand that all claims amongst Counter-Defendants with Licensing Agreements be dismissed in favor of arbitration.

8.      Prior to performing on the business premises of Taboo, Counter-Defendants were instructed to obtain a West Virginia Business Registration Certificate.

9.      Some but not all Counter-Defendants did in fact obtain a West Virginia Business Registration Certificate, authorizing them to conduct business in the State of West Virginia.

10.     The West Virginia Business Registration Certificates obtained by Counter-Defendants reflect their status as independent contractors and/or their status as independent business persons.

11.     At all relevant times Counter-Defendants, by and through the Agreements, Licensing Agreements and/or their actions, represented to Taboo that they intended to perform as independent contractors.

12.     At all relevant times Counter-Defendants, by and through their Agreements, Licensing Agreements and their actions agreed to a financial arrangement whereby Counter-defendants would be able to receive, collect, and retain gratuities for certain stage performances in which they engaged on the premises ("Stage Tips"); whereby Counter-Defendants would be able to receive, collect, and retain gratuities for certain near-table or near-patron performances in which they engaged in the main floor area of the premises ("Floor Tips"); whereby Counter-Defendants would receive and retain a $20 fee for each private dance they performed for a patron ("Dance Fees") upon the premises; whereby Counter-Defendants would receive and retain a $60 fee for each dance they would perform for a patron in the Champagne Room of the premises ("Champagne Fees," collectively with Dance Fees the "Entertainment Fees"); whereby Counter-Defendants would receive and retain gratuities ("Dance Tips") over and above the fees for a patron to receive a private dance or a Champagne Room dance; and whereby they declined to engage in an employer/employee relationship with Taboo where the Counter-Defendants

would receive, subject to the withholding requirements under the Internal Revenue Code ("IRC"), the payment of wages or salary to which an employee is entitled under the Fair Labor Standards Act.

13.     At all relevant times, by and through their Agreements, Licensing Agreements and/or their actions, Counter-Defendants agreed that for a customer to obtain a private dance from an entertainer in the designated private area of Taboo's premises, prior to obtaining the dance or obtaining access to the designated area of the premises, the entertainer and the patron would approach a doorman, bouncer or other representative of Taboo (simply a "doorman" in this paragraph), and the patron would turn over to the doorman a total of $30 to the doorman, representing a $10 fee on the patron to Taboo for the patron to purchase the right of exclusive access to a portion of the private area and representing a $20 fee on the patron to the entertainer for the patron to purchase the private dance.

14.     The total fees of $30 dollars a patron pays to receive access to the private dance area and a private dance, is a mandatory amount set by Taboo, which the patron must pay prior to Taboo permitting the patron to access the private dance area and prior to the entertainer performing a private dance for the patron.

15.     At all relevant times, by and through their Agreements, Licensing Agreements, and their actions, Counter-Defendants agreed that for a customer to obtain a dance from an entertainer in the designated Champagne Room of Taboo's premises, prior to obtaining the dance or obtaining access to the designated Champagne Room of the premises, the entertainer and the patron would approach a doorman, bouncer or other representative of Taboo (simply a "doorman" in this paragraph), and the patron would turn over to the doorman a total of $100 to the doorman, representing a $40 fee on the patron to Taboo for the patron to purchase a half

bottle of champagne and exclusive access to the Champagne Room, and representing a $60 fee on the patron to the entertainer for the patron to purchase the private dance.

16.     The total fees of $100 dollars a patron pays to receive access to the Champagne Room and a Champagne Room dance is a mandatory amount set by Taboo, which the patron must pay prior to Taboo permitting the patron to access the Champagne Room, prior to Taboo providing the patron with a half-bottle of champagne, and prior to the entertainer performing a Champagne Room dance for the patron.

17.     At all relevant times, Counter-Defendants, by the Agreements, Licensing Agreements and/or by their actions, represented to Taboo that they had the legal capacity to contract, that they desired to enter into the Agreements with Taboo under which they agreed to perform as independent contractors, that they were not entering into an employment relationship with Taboo, and that they specifically disclaimed any intent or intention to enter into an employment relationship with Taboo.

18.     The Agreements, Licensing Agreements, and/or the actions of the Counter-Defendants operating in conformity therewith, all had the lawful objective of establishing a true independent contractor relationship between Counter-Defendants and Taboo, including but not limited to establishing: Entitlement to, and ownership of, the Entertainment Fees; the inability of Taboo to control the nature and details of Counter-Defendants' performances and "work"; and the payment structure that permitted Counter-Defendants to utilize the premises of Taboo in order to be able to conduct their independent businesses activities thereon.

19.     Taboo knowingly and voluntarily entered into the Agreements and/or Licensing Agreements with the Counter-Defendants, and fully performed pursuant to the agreed upon terms thereof.

20.     Counter-Defendants knowingly and voluntarily entered into the Agreements and/or Licensing Agreements with Taboo, and at all relevant times until the filing of the instant action, performed pursuant to the terms set forth therein.

21.     During each day that the Counter-Defendants decided to perform on the business premises of Taboo (generally referred to hereinafter as "performance dates"), Counter-Defendants performed private dances and Champagne Room dances for patrons, and obtained and retained the Entertainment Fees as charged to the customers/patrons for each such private dance or Champagne Room dance they performed.

22.     During each of the Counter-Defendants' performance dates, Counter-Defendants obtained and retained Entertainment Fees far in excess of any applicable minimum wage that might have applied if Counter-Defendants were performing at the time as employees of Taboo. In addition, Counter-Defendants earned significant gratuities in the form of Floor Tips, Stage Tips, and Dance Tips as a result of their entertainment performances.

23.     During each workweek wherein Counter-Defendants performed upon Taboo premises, Counter-Defendants obtained and retained Entertainment Fees far in excess of any applicable minimum wage that might have applied if Counter-Defendants were performing at the time as employees of Taboo.  In addition, Counter-Defendants earned significant gratuities in the form of Floor Tips, Stage Tips, and Dance Tips as a result of their entertainment performances.

24.     Whether or not Dance Tips were paid to the Counter-Defendants, and the amount thereof, was in the complete and absolute discretion of the customers/patrons receiving such entertainment services.

25.     Whether or not Stage Tips were paid to the Counter-Defendants, and the amount thereof, was in the complete and absolute discretion of the customers/patrons viewing such stage performances.

26.     Whether or not Floor Tips were paid to the Counter-Defendants, and the amount thereof, was in the complete and absolute discretion of the customers/patrons viewing such performances.

27.     At all relevant times, customers/patrons were permitted, but not required, to remit to the professional entertainers performing at Taboo, including the Counter-Defendants and each and every one of them, Dance Tips, Stage Tips, and Floor Tips; the payment of the same being in the sole and complete discretion of the customers/patrons.

28.     During each of Counter-Defendants' performance dates, Counter-Defendants performed personal dances and other entertainment services for customers/patrons, and obtained and retained the Entertainment Fees for each such personal dance or other entertainment service they performed.

29.     Under the terms of the IRC, employees who earn tips in excess of $20.00 per month are required to report that tip income to their employer, and the employer is obligated under the terms of the IRC to withhold from the wages or salary to be paid to such employees all taxes and other withholdings that are due on said tip income.

30.     The Counter-Defendants, and each and every one of them, earned Dance Tips, Floor Tips and Stage Tips in excess of $20.00 per month while performing at Taboo.

31.     At no time that they performed at Taboo, did the Counter-Defendants, or any one of them, report their tip income (consisting of Dancer Tips, Floor Tips, and Stage Tips) to Taboo, as appropriate, consistent with obligations under the IRC for tipped employees.

32.     During each of Counter-Defendants' performance dates, Counter-Defendants adopted a pattern and practice of non-employee conduct.  By way of example, they obtained and retained Entertainment Fees from dance and entertainment services sales and failed to remit the same to Taboo as the Counter-Defendants would have been required to do if they were employees of Taboo; they selected if, when, where and for whom they would perform; they selected the dates and times of their performances without control by Taboo; they did not perform employee-related services for Taboo, such as waitressing or bartending duties, or act in any capacity other than that of a professional entertainer; they did not subject themselves to the type of controls that Taboo exercises over their true employees; and they did not in any manner or form engage in the type of conduct required by Taboo of their true employees.

33.     Pursuant to the parties' Agreements, Licensing Agreement and/or their actions, at all relevant times Counter-Defendants obtained and retained the Entertainment Fees generated from the sale of entertainment services, and fully conducted themselves as independent contractors as opposed to seeking an employer-employee relationship with Taboo whereby they would be entitled to receive, subject to the withholding requirements of the IRC, set hourly wages.

34.     By the Agreements, Licensing Agreement, and/or their actions, Counter-Defendants acknowledged that they were not, and did not intend to be, "employees" of Taboo and that they did not desire to be compensated as employees by a set hourly wage, but that they intended, rather, to maintain an independent contractor relationship with Taboo and to be able to earn income consistent with that business structure.

35.     At all times, Taboo abided by the terms of the Agreements and/or Licensing Agreements and have fully performed all of their obligations thereunder, including but not

limited to permitting Counter-Defendants the right to obtain and retain Entertainment Fees collected from customers/patrons, which, under an employment arrangement, would have been the exclusive property of Taboo; by not requiring Counter-Defendants to report their tip income to Taboo as would be required under the IRC if Counter-Defendants were, in fact, employees of Taboo; by not making any deductions from the Entertainment Fees obtained and retained by Counter-Defendants in light of the withholdings that Taboo would have been required to make in regard to that income in order to comply with the terms and provisions of the IRC if Counter-Defendants were, in fact, employees of Taboo; and by refraining from exercising those forms of control over the details of the performances and "work" of the Counter-Defendants that Taboo would have been able to exercise if Counter-Defendants had claimed at the time that they were, indeed, employees of Taboo (including, but not limited to, mandating: Their work schedule; the customers for whom they danced; their physical presentation; the content of their entertainment performances; their breaks and meal breaks; the costumes that they wore; that they could not perform at or for competing facilities; and they could be required to undertake job responsibilities of other club employees).

36.     At no time during the time they performed at Taboo, nor at any time prior to the filing and service of their Complaint in the above-entitled action, did Counter-Defendants in any way: advise Taboo that they desired to perform as employees and be subject to both the benefits and duties/obligations of such an employment structure; claim entitlement to any of the rights, privileges, or benefits as set forth in the Fair Labor Standards Act; claim entitlement to any of the rights, privileges, or benefits as set forth in the West Virginia Wage Payment and Collection Act; ask for or seek minimum wage or overtime payments, or other employment benefits; claim to be, or ask to be converted to, employees of Taboo; assert that they were being treated as

employees of Taboo and/or that they were misclassified as independent contractors; claim that they were not receiving the benefits of employees to which they now assert they were entitled; state that they did not intend or desire to comply with, abide by, or be bound to, the Agreements; disclaim their entitlement to the benefits, both financial and otherwise, that they were receiving while operating as independent contractor professional dance entertainers; assert that they did not desire to further perform as independent contractor professional dance entertainers; aver that they believed that the Agreements or Licensing Agreements were invalid; or declare that they felt that the Agreements or Licensing Agreements did not constitute a true and accurate description of their actual business relationship with Taboo.

37. The failure of the Counter-Defendants to make to Taboo the representations set forth in the paragraph immediately above, or to make any one of them, constitutes material omissions by the Counter-Defendants regarding the circumstances of their true business relationship with Taboo.

38. After financially benefiting from their representations to, Agreements with and/or Licensing Agreements with, Taboo, and in particular the agreement to perform as independent contractors, Counter-Defendants now seek the payment of minimum wages and other benefits under the FLSA and the WCPA for all times that they performed as entertainers.

39. If the Counter-Defendants had agreed to perform as employees of Taboo or if they did perform as employees of Taboo, could have claimed the tip credit pursuant to Section 203(m) of the FLSA and W. VA. CODE § 21-5C-4.

40. If the Counter-Defendants had agreed to perform as employees of Taboo, or if they did perform as its employees, Taboo could have required the Counter-Defendants to pay a

portion of their tip income (by way of Dancer Tips, Floor Tips, and Stage Tips) to other regularly tipped employees of Taboo.

41.     True employees of Taboo, who satisfy the standards of being "regularly tipped employees" under the IRC such as Taboo Bartenders, do pool tip income.

## COUNT I
## LEGAL REQUIREMENT TO REMIT ENTERTAINMENT
## FEES/CONVERSION/RESTITUTION

42.     Counter-plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

43.     Under the provisions of the IRC, mandatory charges to a customer/patron collected by an employee are the property, gross receipts, and income of the employer, and not of the employee.  As a result, and because the Entertainment Fees are mandatory charges, in the event that the Counter-Defendants are found to be employees of Taboo in this action, the Entertainment Fees are, *ab initio*, the property of Taboo and are not then the lawful property of the Counter-Defendants, and must be returned to Taboo so that it can appropriately account for such income and pay the relevant taxes thereon.

44.     In the event that there is a determination that Counter-Defendants were employees during the times that they performed at Taboo, the IRC requires that Taboo withhold from any remuneration they ultimately convey (directly, indirectly, or by law) to Counter-Defendants and remit to the Internal Revenue Service ("IRS"), all taxes and other withholdings due on said income, and further requires that they withhold therefrom, and remit to the IRS, all withholdings due in regard to the Dance Tips and Stage Tips earned by the Counter-Defendants during the times that they performed at Taboo.

45.     Given that the Counter-Defendants now claim that they were employees during all times that they performed at Taboo, Counter-Defendants should be required to remit to Taboo all Entertainment Fees that they earned while performing at Taboo so that it is able to properly account to the IRS for that income as being their property and gross receipts, and so that Taboo is able to undertake all of its withholding and tax payment obligations under the IRC.

46.     As a result of the requirements of the IRC as set forth above, if the Counter-Defendants are determined to have been the employees of Taboo, Counter-Defendants should be required to remit to Taboo all Entertainment Fees that they received from customer/patrons while performing on the premises of Taboo and which they have not as-of-yet remitted to Taboo.


47.     Because the Counter-Defendants have asserted that they were, at all relevant times, the employees of Taboo, but have not returned to Taboo the Entertainment Fees that they collected from customers/patrons while performing at Taboo, the Counter-Defendants' retention of such Entertainment Fees constitutes unlawful conversion of the property of Taboo.

48.     As a direct and proximate result of the conversion by the Counter-Defendants of the Entertainment Fees that they received from customers/patrons while performing on the premises of Taboo, Taboo has been significantly and substantially damaged.

<div align="center"><b><u>COUNT II</u></b><br><b><u>FRAUD AND FRAUD IN THE INDUCEMENT</u></b></div>

49.     Counter-Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

50.     Prior to entering into the Agreements, the Counter-Defendants represented to the management staff of Taboo that they, the Counter-Defendants, desired to perform as independent contractor professional entertainers and to have the benefits and freedoms

<div align="center">31</div>

associated with such a business relationship.  In addition, by entering into the Agreements with Taboo and by performing at Taboo at all times pursuant to said Agreements, Counter-Defendants further represented, both by their words and by their actions, that they intended to perform, and did perform, as independent contractors, which representations were central and material components of the parties' business relationship and of Taboo agreement to permit the Counter-Defendants to perform within its establishment under the terms of the Agreements, which, among other things, allowed the Counter-Defendants to collect and retain the Entertainment Fees paid by customers/patrons; precluded Taboo from properly implementing and claiming a tip credit pursuant to Section 203(m) of the FLSA and W. Va. Code § 21-5C-4; and further precluded Taboo from requiring the Counter-Defendants to "tip-out" a portion of their tip income to other regularly tipped employees.

51.     Counter-Defendants' representations were false when made, and were either known by the Counter-Defendants to be false when made or were made recklessly without regard for the truth, in that the Counter-Defendants had no intention of ultimately honoring the terms set forth in the Agreements and intended, rather, to deceive Taboo, all of which permitted Counter-Defendants to benefit from those misrepresentations and actions and to lay in wait before revealing their true intent to seek the benefits of employee status -- directly contrary to their previous representations and actions -- only after such time as the Counter-Defendants had reaped all of the benefits of having performed as independent contractor entertainers and after Taboo had fully performed under the Agreements and would then be unable to protect themselves from the consequent harm and damages that would result by the Counter-Defendants later changing their position.

52.     Counter-Defendants' misrepresentations, actions, and material omissions as set forth in detail above were intended to induce, and did induce, Taboo to enter into the Agreements, to abide by the terms thereof, and to allow the Counter-Defendants to perform under the Agreements and to thereby obtain all the benefits thereof, including but not limited to the ability to collect and retain substantial Entertainment Fees.

53.     Until the filing of Counter-Defendants' complaint in this action, Taboo was unaware of, and had no reason to know, the falsity of Counter-Defendants' representations, their material omissions, and the true facts, including the Counter-Defendants' secret ultimate intention to later eschew the terms of the Agreements and to seek employment benefits in direct contravention to their representations to and Agreements made with Taboo, and Taboo certainly had no such knowledge of the same when they agreed with the Counter-Defendants that they could perform at Taboo as independent contractors imbued with the benefits and freedoms afforded to them pursuant to the terms of the Agreements.

54.     To its detriment, Taboo reasonably relied upon Counter-Defendants' material and false representations and material omissions in entering into the Agreements.

55.     Counter-Defendants made their false representations and failed to disclose material facts for the specific purpose of inducing Taboo to enter into the Agreements and to permit, and to continue to permit, the Counter-Defendants to perform at Taboo under the status and financial arrangements set forth in the Agreements.

56.     Had Taboo known of Counter-Defendants' misrepresentations and material omissions, Taboo would not have acted as they did, including entering into the Agreements and/or performing thereunder; permitting the Counter-Defendants to retain Entertainment Fees; not requiring the Counter-Defendants to abide by the obligations and duties of true employees;

and ceding to the Counter-Defendants' control of their performance dates, their performances, and other aspects of their "work" for the relevant time period.

57.     As a direct and proximate result of the frauds perpetrated by the Counter-Defendants, both by commission and by omission, Taboo has suffered substantial damages.

58.     Taboo is entitled to an award of general and special damages against the Counter-Defendants in amounts to be established by the proofs at trial.

<div align="center">

**COUNT III**
**INNOCENT MISREPRESENTATION**

</div>

59.     Taboo incorporates herein by reference each and every paragraph above as though fully set forth herein.

60.     Counter-Defendants entered into the Agreements with Taboo to perform as entertainers under an independent contractor arrangement, and obtained Taboo consent to enter into those Agreements through misrepresentations; thereby obtaining the financial and other benefits of performing as independent contractors.

61.     At the time they entered into the Agreements with Taboo, and at all times during which they performed at Taboo, Counter-Defendants represented and agreed, as described in detail above, that they would perform (and did perform) under the Agreements as independent contractor professional dance entertainers, which representations were central and material components of the parties' business relationship.

62.     Counter-Defendants' representations were actually false, or were made recklessly without regard for their truth, in that the Counter-Defendants now claim that they were employees of Taboo at all times relevant hereto and seek the benefits of employee status contrary to their representations; the failure to disclose this ultimate intention constituting material omissions on the part of the Counter-Defendants.

63.    Counter-Defendants' misrepresentations and material omissions deceived Taboo, and induced them to enter into the Agreements, which inured to Counter-Defendants' benefit by allowing them to perform under the Agreements as independent contractor professional dance entertainers; to thereby obtain the financial and other benefits of such a business relationship; and to avoid the duties, obligations, burdens and financial arrangements to which Counter-Defendants would have been subjected under a true employer-employee relationship.

64.    As a direct and proximate result of the material misrepresentations and omissions by Counter-Defendants, and Taboo reasonable reliance thereon, Taboo has suffered and/or will suffer substantial damages.

65.    Taboo is entitled to an award of general and special damages against Counter-Defendants in amounts that will be established by the proofs at trial.

### COUNT IV
### UNJUST ENRICHMENT AND QUANTUM MERUIT

66.    Taboo incorporates herein by reference each and every paragraph above as though fully set forth herein.

67.    At all times relevant hereto, Taboo has acted pursuant to, and has abided by, the terms of the Agreements, and has conveyed onto the Counter-Defendants all of the benefits and freedoms associated with independent contractor status under the Agreements and otherwise. In addition, at all times relevant Counter-Defendants have enjoyed all other benefits of performing as independent contractor professional dance entertainers, including but not limited to the tax advantages of such a business structure.

68.    By abiding by the terms of the Agreements, and in particular by permitting the Counter-Defendants to collect and retain Entertainment Fees paid by customers/patrons as the charge for receiving personal entertainment services from the Counter-Defendants, the Counter-

plaintiffs have operated pursuant to a business arrangement whereby they have not obtained the business revenues generated by their purported "employees" in order to be able to pay such individuals the minimum wages, overtime payments, and other benefits to which they now claim entitlement.

69.    If Counter-Defendants are successful in their claims that they were employees, they will be unjustly enriched by receiving both wages and other statutory benefits of employment, while at the same time retaining the Entertainment Fees received by them under the Agreements, Dance Tips, Floor Tips, and Stage Tips that would otherwise -- in an employment context -- have been the property of Taboo or of regularly tipped employees of Taboo, and other non-monetary benefits that they obtained as a result of their having performed as independent contractor professional dance entertainers rather than as employees.

70.    Counter-Defendants obtained Taboo consent to enter into the Agreements and the underlying independent contractor business structure through misrepresentation and material omissions, and thereby obtained the financial and other benefits of working as independent contractor professional dance entertainers.

71.    If Counter-Defendants prevail in their claims, they will have obtained the full benefit of using Taboo's facilities to generate and retain significant revenues as independent contractors, including Entertainment Fees, Dance Tips, Floor Tips, and Stage Tips generated from their performances, along with now potentially obtaining as well wage and other employee benefits, while Taboo will have obtained none of the revenue paid by customers/patrons to the Counter-Defendants who would have then been the "employees" of Taboo in order to be able to pay the Counter-Defendants the wages and other benefits that they now seek by this suit, resulting in Counter-Defendants being unjustly enriched and Taboo being unjustly harmed.

72.     If Counter-Defendants prevail in their claims, they will claim entitlement to wages and/or payments while they have not reported either their Dance Tips, Floor Tips, or Stage Tips to Taboo so that it could then appropriately withhold, from the wage payments that may be ultimately found to be owing to them, all taxes and other withholdings due in regard to the tip income generated by the Counter-Defendants.

73.     As a direct and proximate result of the conduct of Counter-Defendants, Counter-Defendants will, if they are successful in their underlying claims, be unjustly, and significantly, enriched and Taboo will have been unjustly, and significantly, harmed.

74.     In order to ensure that the Counter-Defendants are not unjustly enriched and that Taboo is not unjustly harmed, in order for Taboo to be able to possess the business revenues generated by the "work" of their "employees" so that they can pay the Counter-Defendants the wages and other benefits to which they claim to be entitled by way of this suit, and in order to permit appropriate tax reporting and payment, lawful tip pooling and legally permissible tip credits, in the unlikely event that Counter-Defendants are successful on their claims in this action Taboo is entitled to an award of all Entertainment Fees and tip income (by way of Dance Tips, Floor Tips and Stage Tips) that the Counter-Defendants received from patrons/customers as a result of their entertainment services and which the Counter-Defendants have not previously remitted to Taboo.

**COUNT V**
**ACCOUNTING**

75.     Taboo incorporates herein by reference each and every paragraph above as though fully set forth herein.

76.     As a result of the Agreements, Counter-Defendants obtained Entertainment Fees paid by customers/patrons, and took the same into their own income.  In addition, Counter-

Defendants generated significant sums in the way of Dancer Tips and Stage Tips, and also took the same into their own income.

77.     As a result of the parties operating pursuant to the Agreements, the Counter-Defendants obtained control over significant, but unspecified, sums of Entertainment Fees that, in an employer/employee relationship, would have belonged to Taboo.

78.     As a result of the parties operating pursuant to the Agreements, the Counter-Defendants obtained control over significant, but unspecified, sums of Dance Tips, Floor Tips, and Stage Tips that, in an employer/employee relationship, would have belonged, as applicable, to regularly tipped employees of those companies and could have been used to offset substantial wage obligations under Section 203(m) of the FLSA.

79.     In the event that the Counter-Defendants were performing as employees of Taboo, they were required, under the IRC, to report both their Dancer Tips, Floor Tips, and their Stage Tips to Taboo.  Nevertheless, the Counter-Defendants failed to report such tip income to Taboo consistent with the obligations of employees.

80.     In the unlikely event that the Counter-Defendants are determined to be employees of Taboo in this action, and that Taboo is required to remit wage or overtime payments to the Counter-Defendants, or to any one or group of them, Taboo will be required, under the provisions of the IRC, to withhold from such wage and/or overtime payments all applicable withholdings that are due on the tip income (i.e., Dancer Tips, Floor Tips, and Stage Tips) generated by the Counter-Defendants.

81.     The determination of what may be due to Taboo, what must be withheld from any wage and/or overtime payments that may be found to be due to the Counter-Defendants in this action, and consequently what may be ultimately due to the Counter-Defendants, if anything,

necessarily involves difficult inquiries into financial information regarding the Counter-Defendants' actual receipt of Entertainment Fees, Dancer Tips, Floor Tips, and Stage Tips; all of which is exclusively in the possession of the Counter-Defendants and is not in the possession of Taboo.

82.    Even with the opportunity to engage in liberal discovery, Taboo cannot reasonably be expected to ascertain the complete financial information that is in the exclusive possession of the Counter-Defendants, that was likely not recorded by the Counter-Defendants, that involves a lengthy period of time, and that would require substantial re-creation of events, data, and information of such a nature that it would be too complex or impossible to ascertain through a series of interrogatories/document production requests or through an examination of the Counter-Defendants during depositions.

83.    A jury would likewise be incapable of re-creating the financial records of the Counter-Defendants under the circumstances outlined above and to, thereafter, come to a just conclusion as to the actual financial and other benefits the Counter-Defendants received through their performances at Taboo.

84.    As a consequence of the above, Taboo respectfully requests the equitable relief that is within this Court's jurisdiction pursuant to Fed.R.C.P. 13(a).

85.    For the reasons set forth above, Taboo is entitled to an accounting of all Entertainment Fees, Dancer Tips, Floor Tips, Stage Tips, and other compensation or benefits that the Counter-Defendants received as a result of their performances.

<div align="center">

**COUNT VI**
**CONSTRUCTIVE TRUST**

</div>

86.    Taboo incorporates herein by reference each and every paragraph above as though fully set forth herein.

87.     As a result of the parties' Agreements by which Counter-Defendants performed as independent contractor professional dance entertainers, the Counter-Defendants obtained control over Entertainment Fees which, in an employment context, exclusively belonged to Taboo. As a result, legal title to the Entertainment Fees and tips is presently held by the Counter-Defendants, but in light of the allegations of the Counter-Defendants that they were always employees of Taboo and pursuant to the exercise of equity and good conscience, should properly belong to Taboo.

88.     As the Counter-Defendants obtained possession of the Entertainment Fees, a confidential relationship existed between Taboo and the Counter-Defendants.

89.     In light of the facts and circumstances here, as well as Counter-Defendants' repudiation of the independent contractor relationship between Counter-Defendants and Taboo, retention by the Counter-Defendants of the Entertainment Fees and tip income would be inequitable. Furthermore, imposition of a constructive trust on the Entertainment Fees and tip income received by Counter-Defendants is essential to the effectuation of the legal requirements of the IRC and of equity and justice.

90.     In light of the above and in equity and good conscience, this Court should impose a constructive trust in favor of Taboo in regard to the Entertainment Fees and tip income earned by the Counter-Defendants but not remitted to Taboo, and/or any substitute trust assets.

## ADDITIONAL ALLEGATIONS – ENTERTAINMENT LICENSING AGREEMENT

91.     Those Counter-Defendants that have performed on Taboo premises since approximately June of 2011, have done so pursuant to the express terms of an "Entertainment Licensing Agreement" (the "Licensing Agreement") entered into by both those Counter-Defendants and Taboo.

92.     Those Counter-Defendants that have performed under the Licensing Agreement have specifically acknowledged, represented, and agreed, pursuant to paragraph 15 thereof, that they did not desire to perform on Taboo premises as employees, but rather specifically desired to perform as licensees, and Counter-Defendants specifically disavowed any employment relationship with Taboo.

93.     Those Counter-Defendants that have performed under the Licensing Agreement have specifically acknowledged, represented, and agreed, pursuant to paragraph 13 thereof, that the Entertainment Fees are neither tips nor gratuities, but mandatory charges to the customer as the price for obtaining the service of a personal entertainment performance.

94.     Those Counter-Defendants that have performed under the Licensing Agreement have specifically acknowledged, represented, and agreed, pursuant to paragraph 14 thereof, that the "Room Fees" the club charges the customer for the customer to be granted access to the private room and/or Champagne Room of the premises are mandatory charges to the patron by the club and not a charge to the Counter-Defendants in any way.

95.     Those Counter-Defendants that have performed under the Licensing Agreement have specifically acknowledged, represented, and agreed, pursuant to paragraph 15 thereof, that in the context of an employment relationship, the Entertainment Fees would be the property of Taboo and not the property of the Counter-Defendants.

96.     Those Counter-Defendants that have performed under the Licensing Agreement have specifically acknowledged, represented, and agreed, pursuant to paragraph 15 thereof, that the Room Fees Taboo charges patrons are not deductions from any wages of Counter-Defendants, but that, if the Room Fees were to be somehow construed as deductions, Counter-Defendants authorized those deductions pursuant to W.V. CODE § 21-5-3(e).

97.     Those Counter-Defendants that have performed under the Licensing Agreement have specifically acknowledged, represented, and agreed, pursuant to paragraph 15 thereof, that should any court ever determine or should Counter-Defendant ever assert, that the relationship between the parties is an employment relationship, in order to comply with tax laws and in order to ensure that Taboo is not unjustly harmed and that Counter-Defendants are not unjustly enriched, Counter-Defendants would immediately surrender, reimburse, and pay to Taboo all Entertainment Fees collected and retained by the Counter-Defendants.

98.     Those Counter-Defendants that have performed under the Licensing Agreement have specifically acknowledged, represented, and agreed, pursuant to paragraph 15, should she feel she is being treated as an employee of Taboo, or that her relationship with Taboo is truly an employment relationship, she is to provide written notice of the same and to begin reporting her tip income to Taboo in compliance with the Internal Revenue Code.

## COUNT V – BREACH OF ENTERTAINMENT LICENSING AGREEMENT

99.     Taboo incorporates herein by reference each and every paragraph above as though fully set forth herein.

100.    This counterclaim, Count V, is asserted against those Counter-Defendants who have entered into an Entertainment Licensing Agreement with Taboo.  Taboo asserts that these claims amongst Taboo and entertainers who have entered into a Entertainment Licensing Agreement with Taboo, including those claims arising out of occurrences prior to the date of the relevant Licensing Agreement, must be resolved by individual binding arbitration and that no Counter-Defendant with an Entertainment Licensing Agreement with Taboo is a proper party to or may in any way join or be joined in this lawsuit.  Counterclaims against Counter-Defendants are only included herein, in an abundance of caution, to be sure the counterclaims against the

Counter-Defendants with Entertainment Licensing Agreements are not waived.  Taboo expressly reserves and does not waive the right to demand that all claims amongst Taboo and Counter-Defendants with Entertainment Licensing Agreements be dismissed in favor of arbitration.

101.    As detailed above, those Counter-Defendants with Licensing Agreements have represented, acknowledged, and agreed that the Entertainment Fees they collected from customers are not tips or gratuities but charges for a service, which belong to Taboo in an employment relationship.

102.    As detailed above, those Counter-Defendants with Licensing Agreements have represented, acknowledged, and agreed that should they ever assert that the relationship between the Counter-Defendant and Taboo is an employment relationship, Counter-Defendant would immediately surrender, reimburse and pay to the Club all entertainment fees collected and retained by Counter-Defendant.

103.    Counter-Defendants, by attempting to opt-in to the collective action sought by Plaintiff, or by failing to opt-out of the class action sought by Plaintiff, will have asserted that the relationship between them and Taboo is an employment relationship.

104.    Those Counter-Defendants with Licensing Agreements who attempt to opt-in to the collective action sought by Plaintiffs or who fail to opt-out of the class action sought by Plaintiffs will have the contractual duty to surrender, reimburse, or pay to Taboo the Entertainment Fees that they have collected from patrons and retained.

105.    As to those Counter-Defendants with Licensing Agreements who attempt to opt-in to the collective action sought by Plaintiff or who fail to opt-out of the class action sought by Plaintiffs, pursuant to Paragraph 14 of the Licensing Agreement, the Entertainment Fees that those Counter-Defendants have refused to return to Taboo shall be deemed service charges to the

customers, shall be accounted for by Taboo as such, and Taboo shall be entitled to a wage credit in the amount of such Entertainment Fees.

106.    As a direct and proximate result of those Counter-Defendants with Licensing Agreements who attempt to opt-in to the collective action sought by Plaintiff or who fail to opt-out of the class action sought by Plaintiffs, retaining the Entertainment Fees that they received from customers/patrons while performing on the premises of the Taboo, Taboo will suffer significant and substantial damages.

107.    Taboo is entitled to an award of general and special damages against the Counter-Defendants in amounts to be established by the proofs at trial.

<u>**COUNT VI – FRAUD IN THE INDUCEMENT –**</u>
<u>**ENTERTAINMENT LICENSING AGREEMENT**</u>

108.    Taboo incorporates herein by reference each and every paragraph above as though fully set forth herein.

109.    This counterclaim, Count VI, is asserted against those Counter-Defendants who have entered into an Entertainment Licensing Agreement with Taboo.  Taboo asserts that these claims amongst Taboo and entertainers who have entered into a Entertainment Licensing Agreement with Taboo, including those claims arising out of occurrences prior to the date of the relevant Licensing Agreement, must be resolved by individual binding arbitration and that no Counter-Defendant with an Entertainment Licensing Agreement with Taboo is a proper party to or may in any way join or be joined in this lawsuit.  Counterclaims against Counter-Defendants are only included herein, in an abundance of caution, to be sure the counterclaims against the Counter-Defendants with Entertainment Licensing Agreements are not waived.  Taboo expressly reserves and does not waive the right to demand that all claims amongst Taboo and Counter-Defendants with Entertainment Licensing Agreements be dismissed in favor of arbitration.

110.     Prior to entering into the Licensing Agreements and by the very terms of the Licensing agreement, the Counter-Defendants represented to the management staff of Taboo that they, the Counter-Defendants, desired to perform as independent contractor professional entertainers and to have the benefits and freedoms associated with such a business relationship and that they did not desire to perform as an employee whereby they would be paid minimum wages.  Such representation, under the terms of the Licensing Agreements, allowed the Counter-Defendants to collect and retain the Entertainment Fees paid by customers/patrons, and precluded Taboo from properly implementing and claiming a tip credit pursuant to Section 203(m) of the FLSA and W. Va. Code § 21-5C-4, and which further precluded Taboo from requiring the Counter-Defendants to "tip-out" a portion of their tip income to other regularly tipped employees.

111.     Counter-Defendants' representations were false when made, and were either known by the Counter-Defendants to be false when made or were made recklessly without regard for the truth, in that the Counter-Defendants had no intention of ultimately honoring the terms set forth in the Licensing Agreements and intended, rather, to deceive Taboo, all of which permitted Counter-Defendants to benefit from those misrepresentations and actions and to lay in wait before revealing their true intent to seek the benefits of employee status -- directly contrary to their written agreements and representations -- only after such time as the Counter-Defendants had reaped all of the benefits of having performed as independent contractor entertainers and after Taboo had fully performed under the Licensing Agreement and would then be unable to protect themselves from the consequent harm and damages that would result by the Counter-Defendants later changing their position.

112.     Counter-Defendants' misrepresentations, actions, and material omissions as set forth in detail above were intended to induce, and did induce, Taboo to enter the Licensing Agreements, to abide by the terms thereof, and to allow the Counter-Defendants to perform under the Licensing Agreement and to thereby obtain all the benefits thereof, including but not limited to the ability to collect and retain substantial Entertainment Fees.

113.     At no time during the period Counter-Defendants performed on Taboo premises did they, as required by Paragraph 15 of the Licensing Agreement, notify Taboo that they desired to perform on the premises as employees rather than as licensees or that they believed the relationship to be an employment relationship.

114.     Until the filing of Counter-Defendants' complaint in this action, Taboo was unaware of, and had no reason to know, the falsity of Counter-Defendants' representations, their material omissions, and the true facts, including the Counter-Defendants' secret ultimate intention to later eschew the terms of the Licensing Agreement and to seek employment benefits in direct contravention to their representations to and Licensing Agreements made with Taboo, and Taboo certainly had no such knowledge of the same when they agreed with the Counter-Defendants that they could perform at Taboo as independent contractors imbued with the benefits and freedoms afforded to them pursuant to the terms of the Licensing Agreements.

115.     To their detriment, Taboo reasonably relied upon Counter-Defendants' material and false representations and material omissions in entering into the Licensing Agreement.

116.     Counter-Defendants made their false representations and failed to disclose material facts for the specific purpose of inducing Taboo to enter into the Licensing Agreements and to permit, and to continue to permit, the Counter-Defendants to perform at Taboo under the status and financial arrangements set forth in the Licensing Agreement.

117.    Had Taboo known of Counter-Defendants' misrepresentations and material omissions, Taboo would not have acted as they did, including entering into the Licensing Agreements and/or performing thereunder; permitting the Counter-Defendants to retain Entertainment Fees; not requiring the Counter-Defendants to abide by the obligations and duties of true employees; and ceding to the Counter-Defendants control of their performance dates, their performances, and other aspects of their "work" for the relevant time period.

118.    As a direct and proximate result of the frauds perpetrated by the Counter-Defendants, both by commission and by omission, Taboo has suffered substantial damages.

119.    Taboo is entitled to an award of general and special damages against the Counter-Defendants in amounts to be established by the proofs at trial.

## COUNT VII – QUANTUM MERUIT AND UNJUST ENRICHMENT – ENTERTAINMENT LICENSING AGREEMENT

120.    Taboo incorporates herein by reference each and every paragraph above as though fully set forth herein.

121.    This counterclaim, Count VII, is asserted against those Counter-Defendants who have entered into an Entertainment Licensing Agreement with Taboo.  Taboo asserts that these claims amongst Taboo and entertainers who have entered into a Entertainment Licensing Agreement with Taboo, including those claims arising out of occurrences prior to the date of the relevant Licensing Agreement, must be resolved by individual binding arbitration and that no Counter-Defendant with an Entertainment Licensing Agreement with Taboo is a proper party to or may in any way join or be joined in this lawsuit.  Counterclaims against Counter-Defendants are only included herein, in an abundance of caution, to be sure the counterclaims against the Counter-Defendants with Entertainment Licensing Agreements are not waived.  Taboo expressly

reserves and does not waive the right to demand that all claims amongst Taboo and Counter-Defendants with Entertainment Licensing Agreements be dismissed in favor of arbitration.

122.    At all times relevant hereto, Taboo has acted pursuant to, and has abided by, the terms of the Licensing Agreements, and has conveyed to the Counter-Defendants all of the benefits and freedoms associated with independent contractor status under the Agreements and otherwise. In addition, at all times relevant Counter-Defendants have enjoyed all other benefits of performing as independent contractor professional dance entertainers, including but not limited to the tax advantages of such a business structure.

123.    By abiding by the terms of the Licensing Agreements, and in particular by permitting the Counter-Defendants to collect and retain Entertainment Fees paid by customers/patrons as the charge for receiving personal entertainment services from the Counter-Defendants, Taboo has operated pursuant to a business arrangement whereby they have not obtained the business revenues generated by their purported "employees" in order to be able to pay such individuals the minimum wages, overtime payments, and other benefits to which they now claim entitlement.

124.    If Counter-Defendants are successful in their claims that they were employees, they will be unjustly enriched by receiving both wages and other statutory benefits of employment, while at the same time retaining the Entertainment Fees, Dance Tips, Floor Tips, and Stage Tips that would otherwise -- in an employment context – would have been the property of Taboo or of regularly tipped employees of Taboo, and other non-monetary benefits that they obtained as a result of their having performed as independent contractor professional dance entertainers rather than as employees.

125.    Counter-Defendants obtained Taboo consent to enter into the Licensing Agreements and the underlying independent contractor business structure through misrepresentation and material omissions, and thereby obtained the financial and other benefits of working as independent contractor professional dance entertainers.

126.    If Counter-Defendants prevail in their claims, they will have obtained the full benefit of using Taboo facilities to generate and retain significant revenues as independent contractors, including Entertainment Fees, Dance Tips, Floor Tips, and Stage Tips generated from their performances, along with now potentially obtaining as well wage and other employee benefits, while Taboo will have obtained none of the revenue paid by customers/patrons to the Counter-Defendants who would have then been the "employees" of Taboo in order to be able to pay the Counter-Defendants the wages and other benefits that they now seek by this suit, resulting in Counter-Defendants being unjustly enriched and Taboo being unjustly harmed.

127.    If Counter-Defendants prevail in their claims, they will claim entitlement to wages and/or payments while they have not reported either their Dance Tips, Floor Tips, or Stage Tips to Taboo so that those entities could then appropriately withhold, from the wage payments that may be ultimately found to be owing to them, all taxes and other withholdings due in regard to the tip income generated by the Counter-Defendants.

128.    As a direct and proximate result of the conduct of Counter-Defendants, Counter-Defendants will, if they are successful in their underlying claims, be unjustly, and significantly, enriched and Taboo will have been unjustly, and significantly, harmed.

129.    In order to ensure that the Counter-Defendants are not unjustly enriched and that Taboo is not unjustly harmed, as agreed by the parties in Paragraph 15 of the Licensing Agreement, in order for Taboo to be able to possess the business revenues generated by the

"work" of their "employees" so that they can pay the Counter-Defendants the wages and other benefits to which they claim to be entitled by way of this suit, and in order to permit appropriate tax reporting and payment, lawful tip pooling and legally permissible tip credits, in the unlikely event that Counter-Defendants are successful on their claims in this action Taboo is entitled to an award of all Entertainment Fees and tip income (by way of Dance Tips, Floor Tips and Stage Tips) that the Counter-Defendants received from patrons/customers as a result of their entertainment services and which the Counter-Defendants have not previously remitted to Taboo.

<div align="center">

**COUNT VIII – INNOCENT MISREPRESENTATION –**
**ENTERTAINMENT LICENSING AGREEMENT**

</div>

130.  Taboo incorporates herein by reference each and every paragraph above as though fully set forth herein.

131.  This counterclaim, Count VIII, is asserted against those Counter-Defendants who have entered into an Entertainment Licensing Agreement with Taboo.  Taboo asserts that these claims amongst Taboo and entertainers who have entered into a Entertainment Licensing Agreement with Taboo, including those claims arising out of occurrences prior to the date of the relevant Licensing Agreement, must be resolved by individual binding arbitration and that no Counter-Defendant with an Entertainment Licensing Agreement with Taboo is a proper party to or may in any way join or be joined in this lawsuit.  Counterclaims against Counter-Defendants are only included herein, in an abundance of caution, to be sure the counterclaims against the Counter-Defendants with Entertainment Licensing Agreements are not waived.  Taboo expressly reserves and does not waive the right to demand that all claims amongst Taboo and Counter-Defendants with Entertainment Licensing Agreements be dismissed in favor of arbitration.

132.    Those Counter-Defendants with Licensing Agreements entered into the Licensing Agreement with Taboo to perform as entertainers under an independent contractor arrangement, and obtained Taboo consent to enter into those Licensing Agreements through misrepresentations; thereby obtaining the financial and other benefits of performing as independent contractors.

133.    At the time they entered into the Licensing Agreements with Taboo, and at all times during which they performed at Taboo, the relevant Counter-Defendants represented and agreed, as described in detail above, that they would perform (and did perform) under the Licensing Agreement as independent contractor professional dance entertainers, which representations were central and material components of the parties' business relationship.

134.    Counter-Defendants' representations were actually false, or were made recklessly without regard for their truth, in that the Counter-Defendants now claim that they were employees of Taboo at all times relevant hereto and seek the benefits of employee status contrary to their representations; the failure to disclose this ultimate intention constituting material omissions on the part of the Counter-Defendants.

135.    Counter-Defendants' misrepresentations and material omissions deceived Taboo, and induced them to enter into the Licensing Agreements, which inured to Counter-Defendants' benefit by allowing them to perform under the Licensing Agreement as independent contractor professional dance entertainers; to thereby obtain the financial and other benefits of such a business relationship; and to avoid the duties, obligations, burdens and financial arrangements to which Counter-Defendants would have been subjected under a true employer-employee relationship.

136.    As a direct and proximate result of the material misrepresentations and omissions by Counter-Defendants, and Taboo reasonable reliance thereon, Taboo has suffered and/or will suffer substantial damages.

137.    Taboo is entitled to an award of general and special damages against Counter-Defendants in amounts that will be established by the proofs at trial.

<div align="center">

**COUNT IX – CONSTRUCTIVE TRUST –
ENTERTAINMENT LICENSING AGREEMENT**

</div>

138.    Taboo incorporates herein by reference each and every paragraph above as though fully set forth herein.

139.    This counterclaim, Count IX, is asserted against those Counter-Defendants who have entered into an Entertainment Licensing Agreement with Taboo.  Taboo asserts that these claims amongst Taboo and entertainers who have entered into a Entertainment Licensing Agreement with Taboo, including those claims arising out of occurrences prior to the date of the relevant Licensing Agreement, must be resolved by individual binding arbitration and that no Counter-Defendant with an Entertainment Licensing Agreement with Taboo is a proper party to or may in any way join or be joined in this lawsuit.  Counterclaims against Counter-Defendants are only included herein, in an abundance of caution, to be sure the counterclaims against the Counter-Defendants with Entertainment Licensing Agreements are not waived.  Taboo expressly reserves and does not waive the right to demand that all claims amongst Taboo and Counter-Defendants with Entertainment Licensing Agreements be dismissed in favor of arbitration.

140.    As a result of the parties' Licensing Agreements by which Counter-Defendants performed as independent contractor professional dance entertainers, the Counter-Defendants obtained control over Entertainment Fees which, in an employment context, exclusively belonged to Taboo as a matter of law and under the terms of the Licensing Agreement. As a

result, legal title to the Entertainment Fees and tips is presently held by the Counter-Defendants, but in light of the allegations of the Counter-Defendants that they were always employees of Taboo and pursuant to the exercise of equity and good conscience, should properly belong to Taboo.

141.    As the Counter-Defendants obtained possession of the Entertainment Fees, a confidential relationship existed between Taboo and the Counter-Defendants.

142.    In light of the facts and circumstances here, as well as Counter-Defendants' repudiation of the independent contractor relationship between Counter-Defendants and Taboo, retention by the Counter-Defendants of the Entertainment Fees and tip income would be inequitable. Furthermore, imposition of a constructive trust on the Entertainment Fees and tip income received by Counter-Defendants is essential to the effectuation of the legal requirements of the IRC and of equity and justice.

143.    In light of the above and in equity and good conscience, this Court should impose a constructive trust in favor of Taboo in regard to the Entertainment Fees and tip income earned by the Counter-Defendants but not remitted to Taboo, and/or any substitute trust assets.

### COUNT X – PROMISSORY ESTOPPEL –
### ENTERTAINMENT LICENSING AGREEMENT

144.    Taboo incorporates herein by reference each and every paragraph above as though fully set forth herein.

145.    This counterclaim, Count X, is asserted against those Counter-Defendants who have entered into an Entertainment Licensing Agreement with Taboo.  Taboo asserts that these claims amongst Taboo and entertainers who have entered into a Entertainment Licensing Agreement with Taboo, including those claims arising out of occurrences prior to the date of the relevant Licensing Agreement, must be resolved by individual binding arbitration and that no

Counter-Defendant with an Entertainment Licensing Agreement with Taboo is a proper party to or may in any way join or be joined in this lawsuit. Counterclaims against Counter-Defendants are only included herein, in an abundance of caution, to be sure the counterclaims against the Counter-Defendants with Entertainment Licensing Agreements are not waived. Taboo expressly reserves and does not waive the right to demand that all claims amongst Taboo and Counter-Defendants with Entertainment Licensing Agreements be dismissed in favor of arbitration.

146. Taboo entered into the Licensing Agreements with the relevant Counter-Defendants based upon the representations and actions of the Counter-Defendants that confirmed that they desired to be engaged through independent contractor relationships with Taboo, and that they did not desire to perform as employees or be paid hourly wages, which communicated to Taboo their disavowal of any employer-employee relationship through both their words and actions.

147. In making such promises, the relevant Counter-Defendants should reasonably have expected Taboo to rely upon their representations and actions, and should have further expected that Taboo would govern its actions accordingly and would consider the Counter-Defendants to be independent contractors for all purposes and to treat them accordingly, including but not limited to providing to the Counter-Defendants the financial and other benefits of performing in such an independent contractor capacity.

148. Taboo relied upon those Counter-Defendants' with Licensing Agreements representations and actions to its detriment, and thereafter provided to the Counter-Defendants all of the financial and other benefits of performing as independent contractors and did not require them to undertake and/or comply with any of the duties, obligations, restrictions, or financial conditions associated with an employer-employee relationship.

149.   If Counter-Defendants with Licensing Agreements opt-in or fail to opt-out of the present action, and prevail on their affirmative claims, they will have obtained the full benefit of using Taboo facilities to generate and retain significant revenues as independent contractors, including Entertainment Fees and Dance Tips generated from their performances, along with now obtaining as well wage and other employee benefits, while Taboo will have obtained no revenue generated by the Counter-Defendants as its "employees" in order to be able to pay the Counter-Defendants the wages and other benefits that they now seek by this suit, and will thus be unjustly enriched by their actions; all of which will result in an injustice resulting from Taboo reasonable reliance on the definite and clear promises of the Counter-Defendants.

150.   As a direct and proximate result of the false promises by the Counter-Defendants with Licensing Agreements, Taboo has suffered significant monetary damages.

151.   As a result of the Counter-Defendants' with Licensing Agreements representations and actions as alleged, and of Taboo reasonable and foreseeable reliance thereon, Counter-Defendants should be estopped from obtaining any of the relief that they seek by way of this suit, including any award of wages or other employment benefits, arising out of their performances undertaken as independent contractors where they specifically, unquestionably, and categorically eschewed, denied and declined entitlement to any and all of the accoutrements or benefits of employment, including but not limited to an hourly wage or salary, and where they collected and retained revenue paid by customers that, in a true employment relationship, would have been the property, income, and gross receipts of Taboo.

152.   Alternatively, Taboo is entitled to an award of all Entertainment Fees retained by the Counter-Defendants with Licensing Agreements as a result of their false promises and of

Taboo reliance thereon in permitting Counter-Defendants to perform in its establishment as independent contractors.

153.    As an alternative, Taboo is entitled to a ruling that holds that all Entertainment Fees retained by those Counter-Defendants with Licensing Agreements can be used to offset any award of wages or other monetary relief that they may obtain by way of this action based upon a finding of them having performed as employees of Taboo at any time.

**COUNT XI – SPECIFIC PERFORMANCE
OF ENTERTAINMENT LICENSING AGREEMENT–ACCOUNTING OF TIP INCOME**

154.    Taboo incorporates herein by reference each and every paragraph above as though fully set forth herein.

155.    This counterclaim, Count XI, is asserted against those Counter-Defendants who have entered into an Entertainment Licensing Agreement with Taboo.  Taboo asserts that these claims amongst Taboo and entertainers who have entered into a Entertainment Licensing Agreement with Taboo, including those claims arising out of occurrences prior to the date of the relevant Licensing Agreement, must be resolved by individual binding arbitration and that no Counter-Defendant with an Entertainment Licensing Agreement with Taboo is a proper party to or may in any way join or be joined in this lawsuit.  Counterclaims against Counter-Defendants are only included herein, in an abundance of caution, to be sure the counterclaims against the Counter-Defendants with Entertainment Licensing Agreements are not waived.  Taboo expressly reserves and does not waive the right to demand that all claims amongst Taboo and Counter-Defendants with Entertainment Licensing Agreements be dismissed in favor of arbitration.

156.    Those Counter-Defendants with Licensing Agreements, pursuant to Paragraph 15 of the Licensing Agreement, agreed that if they ever asserted the relationship between themselves and Taboo to be an employment relationship, they would immediately provide Taboo

with an accounting of tip income they earned in order to facilitate Taboo ability to submit appropriate reporting and/or filings with the IRS.

157.    Even with the opportunity to engage in liberal discovery, Taboo cannot reasonably be expected to ascertain the complete tip income information that is in the exclusive possession of the Counter-Defendants, that was likely not recorded by the Counter-Defendants, that involves a lengthy period of time, and that would require substantial re-creation of events, data, and information of such a nature that it would be too complex or impossible to ascertain through a series of interrogatories/document production requests or through an examination of the Counter-Defendants during depositions.

158.    A jury would likewise be incapable of re-creating the tip income of the Counter-Defendants under the circumstances outlined above and to, thereafter, come to a just conclusion as to the tip income Counter-Defendants received through their performances at Taboo.

159.    As a consequence of the above, Taboo respectfully requests the equitable relief that is within this Court's jurisdiction pursuant to Fed.R.C.P. 13(a).

160.    For the reasons set forth above, Taboo is entitled to an accounting of all tip income Counter-Defendants received as a result of their performances at Taboo.

## COUNT XII – ACCOUNTING OF ENTERTAINMENT FEES – ENTERTAINMENT LICENSING AGREEMENT

161.    Taboo incorporates herein by reference each and every paragraph above as though fully set forth herein.

162.    This counterclaim, Count XII, is asserted against those Counter-Defendants who have entered into an Entertainment Licensing Agreement with Taboo.  Taboo asserts that these claims amongst Taboo and entertainers who have entered into a Entertainment Licensing Agreement with Taboo, including those claims arising out of occurrences prior to the date of the

relevant Licensing Agreement, must be resolved by individual binding arbitration and that no Counter-Defendant with an Entertainment Licensing Agreement with Taboo is a proper party to or may in any way join or be joined in this lawsuit.  Counterclaims against Counter-Defendants are only included herein, in an abundance of caution, to be sure the counterclaims against the Counter-Defendants with Entertainment Licensing Agreements are not waived.  Taboo expressly reserves and does not waive the right to demand that all claims amongst Taboo and Counter-Defendants with Entertainment Licensing Agreements be dismissed in favor of arbitration.

163.    As detailed above, those Counter-Defendants with Licensing Agreements have agreed that the Entertainment Fees they have collected are the property of Taboo in the context of an employment relationship, have agreed to turn those monies over to Taboo if either a court determines the relationship to be employment or if they assert the relationship to be employment, and have agreed that any monies not so remitted shall be deemed to be service charges to be accounted for in the gross receipts of Taboo that offset wage obligations.

164.    A complete accounting of the Entertainment Fees retained by Counter-Defendants with Licensing Agreements is necessary and appropriate to determine the amounts that are to be returned to Taboo and/or to determine the amount of the wage credit to which Taboo is entitled.

165.    Even with the opportunity to engage in liberal discovery, Taboo cannot reasonably be expected to ascertain the complete Entertainment Fee information that is in the exclusive possession of the Counter-Defendants, that was likely not recorded by the Counter-Defendants, that involves a lengthy period of time, and that would require substantial re-creation of events, data, and information of such a nature that it would be too complex or impossible to ascertain through a series of interrogatories/document production requests or through an examination of the Counter-Defendants during depositions.

166.    A jury would likewise be incapable of re-creating the Entertainment Fee records of the Counter-Defendants under the circumstances outlined above and to, thereafter, come to a just conclusion as to the actual Entertainment Fees Counter-Defendants received through their performances at Taboo.

167.    As a consequence of the above, Taboo respectfully requests the equitable relief that is within this Court's jurisdiction pursuant to Fed.R.C.P. 13(a).

168.    For the reasons set forth above, Taboo is entitled to an accounting of all Entertainment Fees Counter-Defendants received as a result of their performances at Taboo.

## PRAYER FOR RELIEF

Wherefore, Taboo prays for Judgment against the Counter-Defendants as follows:

1.    For return of all Entertainment Fees generated by Counter-Defendants and not previously remitted to Taboo;

2.    For restitution, including a return of all Entertainment Fees, or for set-offs of Entertainment Fees received by Counter-Defendants and not remitted to Taboo, against any award of wages, overtime payments, monetary benefits, or other accoutrements of employment to which Counter-Defendants may be found to be entitled in this action;

3.    For damages as determined to be just and equitable;

4.    For an accounting of all Entertainment Fees earned by Counter-Defendants but which have not been previously remitted to Taboo;

5.    For an accounting of all Dance Tips, Floor Tips, and Stage Tips earned by Counter-Defendants to permit Taboo to satisfy their obligations under the Internal Revenue Code;

6.    For imposition of a constructive trust in favor or Taboo on all Entertainment Fees received by Counter-Defendants;

7.    For costs of suit;

8.    For interest;

9.    For attorney fees; and

10.    For such other relief as the Court may deem just and proper

Respectfully submitted,

Dated this 2nd Day of April, 2012          *s/ David A. Camilletti*
                                            David A. Camilletti, Esquire
                                            WV State Bar Id No. 599
                                            Co-Counsel for Defendants
                                            103 W. Liberty Street
                                            Charles Town, West Virginia  25414
                                            (304) 725-0937 telephone
                                            (304) 725-1039 facsimile
                                            dcamilletti@frontier.com

                                            Bradley J. Shafer (P36604)*
                                            Matthew J. Hoffer (MI Bar No. P70495)*
                                            **SHAFER & ASSOCIATES, P.C.**
                                            Co-Counsel for Defendants
                                            3800 Capital City Boulevard, Suite 2
                                            Lansing, Michigan 48906
                                            Telephone: (517) 886-6560
                                            ***Pending Admission Pro Hac Vice***

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that on this 2nd Day of April, 2012, the foregoing documents were filed electronically with the United States District Court for the Northern District of West Virginia via the Court's electronic filing system and thereby served upon all parties of record.

<div style="margin-left:40%">

*s/David A. Camilletti*
David A. Camilletti, Esquire
WV State Bar Id No. 599
Co-Counsel for Defendant Taboo, LLC
and Casey McGee
103 W. Liberty Street
Charles Town, West Virginia  25414
(304) 725-0937 telephone
(304) 725-1039 facsimile
dcamilletti@frontier.com

</div>